UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JAN 03 2017
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

CASE NO. 5:17cv002-KGB

JODI LANG                                                                                           PLAINTIFF

vs.    This case assigned to District Judge Baker
       and to Magistrate Judge Kay

CLINTON HAMPTON; ROWENA COPICO
AND LUCAN HARGRAVES                                                                    DEFENDANTS

## COMPLAINT AT LAW

Plaintiff states as follows:

1.  Plaintiff is a resident of Desha County, Arkansas; defendants, Clinton Hampton and Lucan Hargraves, are residents of Chicot County, Arkansas; and defendant, Rowena Copico, is a resident of Drew County, Arkansas.

### Jurisdiction and Venue

2.  Plaintiff seeks relief via 42 U.S.C. §§ 1983, 1985 for a conspiratorial deprivation of her civil rights, specifically, the deprivation of her property interest in the form of her employment as Administrator of the Dermott City Nursing Home ("Home") and 18 U.S.C. § 1961 for damages she sustained because of defendants' RICO (Racketeer Influenced and Corrupt Organizations) pattern of racketeering activity.

2.1  Federal questions are presented, infra, and jurisdiction is predicated upon 42 U.S.C. § 1343(1) and 28 U.S.C. § 1331.

2.2  Venue is appropriate given that the parties reside in the Pine Bluff Division,

Eastern District of Arkansas.

**Factual Basis For Claims**

3. Plaintiff was employed as Administrator of the Dermott City Nursing Home from January, 2009 to November 21, 2016; the Home is a publicly owned facility by the City of Dermott and by applicable law, is under the control of a five-member commission pursuant to city ordinance. The Home provides housing, maintenance and nursing care to it's residents according to the requirements of the Arkansas State Office of Long Term Care, which sets standards for nursing homes in the state. In 2012, under plaintiff's direction, the Home was designated "number one" of all 233 nursing homes of like kind in the state by the Arkansas Nursing Home Nurses Association. It's excellent standing rendered the facility Dermott's "crown jewel" with an outstanding reputation and a source of pride for the Dermott citizenry.

4. The Dermott electorate passed several sales tax levies that provided for a portion of local sales taxes be collected and used only for capital improvements to the Home.

5. Defendant Hampton ("Mayor") was elected Dermott's Mayor in the general election of 2014 and assumed that office in January, 2015. One of his first actions as Mayor was to create a position for defendant Lucan Hargraves ("Lucan") as the Mayor's "Liaison" to the Home. The Mayor made a statement that the Home's former controllers had been getting the Home's monies and that it was "their" turn to get it. To that end, he acted on that erroneous supposition and convinced the newly appointed co-conspiratorial

2

commissioners to get additional audits of the Home's finances – which actually confirmed that the Home's finances were on the up and up and was profitable.

6. It soon became apparent to plaintiff that the Mayor was attempting to interfere with the Home's personnel policies and intended to gain control over the Home's finances, particularly the tax-funded capital improvement account, over which he had signature authority on the bank account as Mayor of Dermott.

7. With need for floor repairs to the Home, plaintiff made inquiries about the capital improvement fund to the Mayor but got unsuitable responses from him.

8. Plaintiff then made a formal FOI (Freedom of Information) request about the status of the account and learned that the Mayor had withdrawn the money and used it for other purposes, albeit contrary to the electorate's designation of the fund's purpose and state law, albeit an abuse of office, a violation of criminal law, Ark. Code Ann. § 5-37-208 and a part of the Mayor's pattern of racketeering activity.

9. Upon information and belief, $127,000.00 was in the account which has been depleted down to nothing through the activities of the Mayor and his co-conspirators. Defendant Rowena ("Copico"), who acts as a "bookkeeper" for the City of Dermott, assisted the Mayor's misapplication of said funds and concocted a story in an attempt to justify the conversion to the effect that the state had erroneously designated too much of the collected taxes as "capital improvement" tax levies.

10. Upon further information and belief, the State through its powers (Legislative Audit), is auditing the financial transactions of the City.

3

11. Plaintiff's dedication to duty irritated the Mayor and he directed the Home's Board of Commissioners to terminate her employment in retaliation, which occurred on November 21, 2016.

11.1 To maintain and reward four of the commissioners' (of the five) participation in his scheme to terminate plaintiff, and to further his plans to take over the Home, the Mayor directed the commissioners, all public servants, to pay themselves $600 each, an *ultra vires* act according to Section 9, Dermott City Ordinance No. 599-2015-02, which prohibits such payments and consequently, the promised payments are not only *ultra vires* acts, each constitutes a separate Abuse of Public Trust by the Mayor and the said co-conspiratorial commissioners, all criminal acts (eight counts – four counts committed by the Mayor and four counts committed by the four commissioners) violative of Ark. Code Ann. § 5-52-101, a class D felony and punishable by imprisonment for more than one year under the state law of Arkansas. The transgressions here involve bribery (Chapter 52, supra, is entitled "Corruption in Public Office") as required by 18 U.S.C. § 1961 (1)(A).

12. Prior to the plaintiff's termination, Lucan advised plaintiff that the Mayor wanted his girlfriend's mother rehired as a cafeteria cook, whose employment plaintiff had terminated because the employee had failed to show up for work and didn't call in.

13. Lucan told plaintiff that her refusal to rehire the cook was "insubordination" and grounds for termination, although neither the "Liaison" nor the Mayor had any authority in the matter, albeit an Abuse of Office and a criminal violation of Ark. Code

4

Ann. § 5-37-208. Lucan, in these premises, delivered an "order" to rehire from the Mayor and insisted that plaintiff obey.

14. The Mayor overrode the plaintiff, through a decision by the Mayor's newly created "Personnel Committee", albeit *ultra vires* and illegal, and rehired the cook and directed that she receive back pay.

15. The Mayor, during his term of office inclusive of 2015 and 2016, operated a night club, east of Dermott, and has from time to time directed city workers to utilize city equipment, a backhoe, to repair the club's deep well; to repair the roof of the night club building and to expend city labor and expenses for his personal benefit, all upon several occasions, albeit a criminal offense in violation of Ark. Code Ann. § 5-52-107 and part of the pattern of racketeering activity, during his term of office.

16. The Mayor has impersonated a law enforcement officer on at least two occasions. Firstly, a female object of his romantic affection summoned the Dermott Police for protection against his aggressive conduct, but upon police arrival, the Mayor made the statement that he was equivalent to the Sheriff and was not subject to arrest. The Mayor produced a badge claiming the responding officer, could not arrest him, albeit a criminal violation of Ark. Code Ann. § 5-32-208 and part of the pattern of racketeering activity.

17. Secondly, Trooper Shulz, Arkansas State Police, stopped the Mayor in Chicot County for a traffic violation. During the process, the Mayor flashed a badge and stated, as a law enforcement officer, he was not subject to arrest, again a violation of

Ark. Code Ann. § 5-32-208 and part of his racketeering activity pattern.

## Deprivation Of Plaintiff's Civil Right To Employment, A Property Interest, 42 U.S.C. §§ 1983, 1985

18. Plaintiff had a property interest in her employment which was wrongfully taken from her through a denial of due process, guaranteed to her by the 14th Amendment to the United States Constitution.

19. Specifically, the Mayor and four of the Home's five commissioners, acting in conspiratorial consent and by state action agreed in a meeting to terminate plaintiff upon specious grounds.

20. The co-conspirator commissioners are LouBertha Bailey, Barbara Smith, Julia Boatner and Tonya Broadnax. Lucan and Copico conspired with the Mayor and the aforesaid commissioners of detailed, supra.

21. Plaintiff was not afforded a pre-termination hearing which constitutes a denial of her civil right to due process which deprived her of her employment property interest.

## Defendants' RICO Activities Caused Plaintiff A Loss Of Her Employment

22. Defendants, and the non-party co-conspirators, caused plaintiff injury to her property, her employment, because of their RICO pattern of racketeering activities, supra. Plaintiff was the target of their conspiracy, especially with regard to the predicate felonies detailed, supra. Other malfeasances are pled, supra, to illustrate the Mayor's *modus operandi* to establish an image that he was privileged above the law, albeit to

keep the co-conspirators in his thrall, so those allegations form a part of the racketeering pattern of activity, all in violation of and actionable under 18 U.S.C. § 1961, et seq.

23. Because of the aforesaid RICO violations, plaintiff has sustained damages, infra.

24. Plaintiff has sustained the following damages by reason of defendants' violation of her civil right to her employment property interest and their RICO pattern of racketeering activities, all of which exceed minimum jurisdictional requirements:

A. Loss of her job and salary at $1,440, a week wages based upon $36 an hour for 40 hours;

B. Loss of compensatory incidentals - vacation and sick pay, health and disability coverages;

C. Mental anguish, and

D. Stigmatized professional reputation.

All of which will continue because of the permanent nature of the injuries.

24.1 Further, plaintiff is entitled to punitive damages because defendants' knew or should have known, that their conduct would likely cause plaintiff harm, inferring intentional malice, arising from defendants' intent or a callous indifference. Exemplary damages in an amount allowed by law should be awarded.

25. Plaintiff demands a jury trial.

WHEREFORE, plaintiff prays for compensatory and punitive damages via judgment, jointly and severally, against defendants in an amount proven. Plaintiff

further prays for pre and post verdict interest, restoration to her employment, attorney fees and all other relief to which she is entitled.

                              JODI LANG, PLAINTIFF

By: _____
Charles Sidney Gibson – ABN: 70027
Chuck Gibson – ABN: 90030
Gibson Law Office
P.O. Box 510
Dermott, AR 71638
(870) 538-3288
(870) 538-5029 Facsimile
charlessidneygibson@yahoo.com
chuckgibsonii@gmail.com