**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**JODI LANG**                                                                                 **PLAINTIFF**

**v.**                                    **Case No. 5:17-cv-00002-KGB**

**CLINTON HAMPTON,**
**ROWENA COPICO, and**
**LUCAN HARGRAVES**                                                   **DEFENDANTS**

**OPINION AND ORDER**

Before the Court are separate defendants Clinton Hampton and Lucan Hargraves' motion for summary judgment (Dkt. No. 38) and separate defendant Rowena Copico's motion for summary judgment (Dkt. No. 41). Plaintiff Jodi Lang seeks relief pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that defendants in their individual capacities conspired to terminate her from her employment with the Dermott City Nursing Home without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Ms. Lang also seeks relief pursuant to 18 U.S.C. § 1961, *et seq.*, alleging that defendants in their individual capacities caused her damages as a result of their "pattern of racketeering activity." (Dkt. No. 1, ¶ 2). Defendants move for summary judgment on each of these claims. Ms. Lang responded to defendants' motions for summary judgment (Dkt. No. 55). The Court grants both Mr. Hampton and Mr. Hargraves' motion for summary judgment (Dkt. No. 38) and Ms. Copico's motion for summary judgment (Dkt. No. 41).

**I.**     **Factual And Procedural Background**

Mr. Hampton and Mr. Graves filed a statement of undisputed material facts (Dkt. No. 40). Ms. Lang's only response to the statement of undisputed material facts is a statement in her response: "Defendants' statement of undisputed facts are addressed via argument, as immaterial

or overcome by contrary undisputed facts." (Dkt. No. 55, ¶ 4). Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas states that, if a non-moving party opposes a motion for summary judgment, "it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." Ms. Lang's statement in her response is not "a separate, short and concise statement" of the material facts to which a genuine dispute exists. Accordingly, unless otherwise noted, the following facts are taken from Mr. Hampton and Mr. Grave's statement of undisputed material facts, as the Court considers those facts deemed admitted by Ms. Lang.

Ms. Lang began her employment as the administrator of the Dermott City Nursing Home ("Nursing Home") in January 2009 (Dkt. No. 8, ¶ 3). The Nursing Home is owned by the City of Dermott, Arkansas, and is governed by a Nursing Home Commission ("Commission") with a five-member Board of Commissioners pursuant to a city ordinance (*Id.*). Mr. Hampton was elected Mayor of Dermott in 2014 and assumed his position on January 1, 2015 (Dkt. No. 40-1, at 2). On January 22, 2015, the Dermott City Council voted to hire Mr. Hargraves as a liaison to the Nursing Home (*Id.*). In this position, Mr. Hargraves "checked with all departments [of the City] thoroughly through the week," including the Nursing Home (*Id.*).

On January 23, 2015, Mr. Hampton, in his role as Mayor, and the City Council "temporarily suspended the duties and responsibilit[ies] of the nursing home commission until further notice." (Dkt. No. 40-2, at 1). Until further notice was give, Ms. Lang was instructed to "answer directly to our representative, Mr. Lucan Hargraves." (*Id.*). On February 3, 2015, Ms. Lang sent a letter to Mr. Hargraves expressing her misgivings about the suspension of the Nursing Home's Board of Commissioners and actions taken since that suspension occurred (Dkt. No. 40-3, at 1). Furthermore, Ms. Lang noted that a "personnel review committee was appointed by the

Mayor to review a personnel issue that had already been reviewed by the now suspended Board," and that "the City Council was not included in the process of appointing a personnel review committee." (*Id.*). According to Ms. Lang, the personnel review committee appointed by the Mayor "decided to overturn" the decision of the actions of an employee's Department Manager and Administrator regarding that employee's termination (*Id.*). Ms. Lang also sent Mr. Hampton a letter "requesting to appeal the decision of the Personnel Review Committee you appointed to review the termination of Ms. Shantell Patton." (*Id.*, at 2).

On May 15, 2015, the Mayor and the City Council voted to put the Nursing Home's Board of Commissioners "back in place." (Dkt. No. 40-4, at 1). On May 26, 2015, during a "special called council meeting," the Mayor and City Council interviewed replacements for the Nursing Home's Board of Commissioners (*Id.*). At that meeting, the Mayor and City Council voted to replace three former members of the Nursing Home's Board of Commissioners with three new members (*Id.*).

On July 13, 2015, Ordinance No. 599-2015-02 was passed by the City Council (Dkt. No. 40-6, at 1-6). Per Ordinance No. 599-2015-02, the City of Dermott shall "continue and perpetuate a commission to be known as the Nursing Home Commission to be composed of five (5) citizens who are qualified electors of the City of Dermott, Arkansas," and the Ordinance gives the Nursing Home Commission "full and complete authority to manage, operate, maintain and keep in good repair the Dermott Nursing Home . . . ."(*Id.*, at 1-2). The Ordinance also states that, "Commissioners shall have the right to employ or remove the administrator and all other employees provided the hiring, management, promotion, discipline[,] and termination of employees shall be in compliance with all federal and state law . . . ." (*Id.*, at 2). The Ordinance further states that "[e]mployees who feel aggrieved shall be entitled to a graduated disciplinary

appeal process," and that such appeals shall be heard first by the Nursing Home Commission and then to the Dermott City Council (*Id.*, at 3-4).

On May 4, 2016, Ms. Lang signed an acknowledgment that she had "received and read a copy of the Dermott City Nursing Home Employee Handbook dated May 2016." (Dkt. No. 40-8). Ms. Lang further acknowledged that "this handbook supersede[d], and replaec[d] [sic] all prior published or unpublished policies, handbooks, or other publications related to personnel matters." (*Id.*). Further, Ms. Lang agreed and acknowledged that the employment relationship she had with the Nursing Home would "be 'at will' in nature" and that either could "terminate this employment relationship at any time and without cause or penalty." (*Id.*). The handbook itself states that "[a]ll employees at Dermott City Nursing Home are employed '**At Will**.'" (Dkt. No. 40-7, at 4 (emphasis in original)). Per the handbook, an employee's "at will" status could "only be altered by a written contract of employment which [wa]s specific as to all material terms and [wa]s signed by both the employee and the Administrator of Dermott City Nursing Home." (*Id.*).

On November 21, 2016, the Nursing Home Commission terminated Ms. Lang's employment with the Nursing Home (Dkt. Nos. 40-9, at 4; 40-10, at 2). According to Ms. Julia Boatner, the chairperson of the Nursing Home Commission on November 21, 2016, Ms. Lang was terminated "for absenteeism/tardiness, work performance[,] and violations of procedures. Specifically, Ms. Lang wrote a $10,000 check without Nursing Home Commission approval; violated the policies and procedures of the Nursing Home Commission; [made] derogatory posts; and misappropriated Nursing Home Funds." (Dkt. No. 40-10, at 2). Ms. Boatner signed "Employee Warning Reports" which were given to Ms. Lang on October 19, 2015, and February 15, 2016, where Ms. Lang was cited for failure to "follow the Board of Direct[ors] directions" and

4

for lack of attendance, insubordination, lateness, violation of company policies, and authorized absences (*Id.*, at 4-5).

During the November 21, 2016, meeting of the Nursing Home Commission, Ms. Lang stated "ya'll discussion [sic] what I did and didn't do right in executive session." (Dkt. No. 40-9, at 3). Ms. Lang testified that the Nursing Home Commission voted in executive session to terminate her (Dkt. No. 40-17, at 4). Mike Boyd, a former commissioner on the Nursing Home Commission, testified that he did not hear Mr. Hampton say "Fire Jodi Lang," but Mr. Boyd did say that "it was apparent" that Mr. Hampton wanted Ms. Lang terminated (Dkt. No. 40-26, at 2).

Ms. Lang sent a letter to Mr. Hampton invoking the "graduated disciplinary appeal process" and requesting that the issue of her termination "be placed on the agenda for the next scheduled Dermott City Council meeting held in December" (Dkt. No. 40-20, at 1). The minutes of the Dermott City Council's December 12, 2016, meeting indicate that the City Council voted to terminate Ms. Lang (Dkt. No. 40-11, at 1). There is no record evidence that Ms. Lang spoke or otherwise appeared at the December 12, 2016, City Council meeting. At the same meeting, the City Council passed Resolution No. 2016-10, which resolved to pay $600.00 to each member of the Nursing Home Commission (*Id.*, at 3). Mr. Boyd asserts that the "reinstated board [] was promised $600.00 in a bonus in a board meeting . . . ." (Dkt. No. 55-1, at 2). However, at his deposition, Mr. Boyd testified that he never heard Mr. Hampton offer payment to the board members of the Nursing Home Commission in exchange for Ms. Lang's termination (Dkt. No. 40-26, at 3). Ms. Boatner avers that "none of the Commissioners ever actually received" a $600.00 payment (Dkt. No. 40-10, at 2).

Ms. Lang presents the affidavit of Mr. Boyd to rebut defendants' motions for summary judgment (Dkt. No. 55-1). Mr. Boyd avers that Mr. Hampton "didn't want Ms. Lang to run the

5

home," and that he "interfered with employee matters and deemed Ms. Lang's refusal to rehire the mayor's girlfriend's mother, Shantiel Patton[,] as a cook, insubordination." (*Id*., at 1). Mr. Boyd also states that Mr. Hampton removed $127,000.00 from an account designated for capital improvements to the Nursing Home (*Id*., at 1-2). Mr. Boyd further asserts that the funds were "placed in the general fund, which was basically unrestricted," and that "[r]ecent audits have cited irregularities in verifying claimed expenses" (*Id*., at 2).

At the June 13, 2016, Dermott City Council meeting, the City Council voted to transfer "various amounts" and "to close certain accounts" that were not in use any more (Dkt. No. 40-21, at 2). On June 14, 2016, a letter signed by Mr. Hampton and six of the seven City Council members was sent to Simmons Bank to transfer $127,370.25 to the "General Fund" account at the First Service Bank in Dermott, Arkansas (Dkt. Nos. 40-22, at 1; 40-23, at 1). In July 2016 Ms. Lang presented documents to the City Council indicating that this transfer had occurred (Dkt. No. 40-17, at 5). She does not, however, have any knowledge of any statements indicating that she was terminated because this information was distributed to the City Council members (*Id*).

Finally, at some point in 2016, Mr. Hampton paid $70.00 to the City of Dermott for gravel (Dkt. No. 40-25, at 2). Employees of the City of Dermott delivered the gravel to Mr. Hampton's property and spread it out (*Id*.). While the gravel was being spread, Mr. Hampton asked those employees to "dig a hole" that he "could put some bricks in." (*Id*.). On a different occasion, two employees of the City of Dermott "came on their lunch hour and put a tarpaulin and nailed it down on the other side of the roof" on Mr. Hampton's property (*Id*.). Those employees were paid $20.00 apiece by Mr. Hampton (*Id*., at 3). Ms. Lang also accuses Mr. Hampton of impersonating a police officer on several occasions (Dkt. No. 8, ¶¶ 16, 17).

## II. Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. Discussion

Ms. Lang's complaint alleges that, in their individual capacities, defendants: (1) violated her Fourteenth Amendment due process rights, in violation of 42 U.S.C. § 1983; (2) deprived her of her civil rights, in violation of 42 U.S.C. § 1985; and (3) caused her damages because of the racketeering activities, in violation of 18 U.S.C. § 1961 *et seq.* In their motions for summary judgment, defendants argue that they are entitled to summary judgment on each of these claims

(Dkt. Nos. 38, 41). For the reasons set forth below, the Court agrees and grants defendants' motions for summary judgment.

### A. Due Process Claim

Ms. Lang contends that defendants violated her right to due process under the Fourteenth Amendment to the United States Constitution by failing to provide her with a pre-termination hearing (Dkt. No. 8, ¶¶ 18-21). Defendants argue that Ms. Lang did not have a constitutionally protected property interest in her position as Administrator of the Nursing Home.

To recover under § 1983, a plaintiff must prove: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of Saint Paul*, 679 F.3d 698, 704 (8th Cir. 2012) (quoting *Shrum ex rel. Kelly v. Kluck,* 249 F.3d 773, 777 (8th Cir. 2001) (citation omitted)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated." *Dover Elevator Co. v. Ark. State Univ.,* 64 F.3d 442, 445–46 (8th Cir.1995) (citing *Carolan v. Kansas City,* 813 F.2d 178, 181 (8th Cir.1987)).

"To establish a constitutionally protected deprivation of property, [plaintiffs] must show they each held 'a property right in continued employment.'" *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1089 (8th Cir. 2014) (citing *Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark.,* 716 F.3d 1141, 1146 (8th Cir. 2013)). In the present matter, Ms. Lang's property interest depends on Arkansas state law, which presumes that an employer may discharge an employee at-will for good cause, no cause, or even a morally wrong cause. *See Kimble v. Pulaski Cty. Special School Dist.*, 921 S.W.2d 611, 615 (Ark. 1996); *Griffin v. Erickson*, 642 S.W.2d 308, 310 (Ark. 1982). Where an employee is terminable at the will of his or her employer,

the employee has no property interest in his or her continued employment under the Fourteenth Amendment. *Crews*, 771 F.3d at 1091 (citation omitted).

In Arkansas, an employer's right to terminate an employee at will may be proven by an employment contract that specifies that the employer may terminate the employee at any time. *Hice v. City of Fort Smith*, 58 S.W.3d 870, 874 (Ark. App. 2001). The Nursing Home's employee handbook states that "[a]ll employees at Dermott City Nursing Home are employed '**At Will**.'" (Dkt. No. 40-7, at 4 (emphasis in original)). Further, the employee handbook provides that "the employee or the Nursing Home may terminate the employment relationship at any time, with or without cause or notice." (*Id*.). The handbook also notes that "[t]his status can only be altered by a written contract of employment which is specific as to all material terms and is signed by both the employee and the Administrator of the Dermott City Nursing Home." (*Id*.). This handbook "supersedes or replaces all prior published or unpublished policies . . . ." (*Id*., at 3).

On May 4, 2016, Ms. Lang signed an acknowledgment that she had "received and read a copy of the Dermott City Nursing Home Employee Handbook dated May 2016." (Dkt. No. 40-8, at 1). Ms. Lang further acknowledged that "this handbook supersede[d], and replaec[d] [sic] all prior published or unpublished policies, handbooks, or other publications related to personnel matters." (*Id*.). Finally, Ms. Lang agreed and acknowledged that the employment relationship she had with the Nursing Home was "'at will' in nature" and that either she or the Nursing Home could "terminate this employment relationship at any time and without cause or penalty." (*Id*.).

On the undisputed record evidence, even with all reasonable inferences drawn in favor of Ms. Lang, any reasonable juror would conclude that Ms. Lang's employment was "at will." The Nursing Home's handbook unambiguously states that all employees are employed "at will." (Dkt. No. 40-7, at 4). Ms. Lang signed an acknowledgement that her employment was "at will." (Dkt.

9

No. 40-8, at 1). Because her employment was "at will," Ms. Lang does not have a protected property interest in her continued employment. "[W]here no such property interest exists, there can be no due process violation." *Dobrovoiny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

In any event, even if Ms. Lang did have a protected property interest in her continued employment, on the undisputed record evidence, she was provided with all the process that was due. "A state may also create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion." *Craft v. Wipf*, 836 F.2d 412, 417 (8th Cir. 1987) (citations omitted). To the extent Ms. Lang argues that she was entitled to a "graduated disciplinary appeal process" pursuant to Dermott's Ordinance 599-2015-02, any reasonable juror viewing the undisputed record evidence would conclude that Ms. Lang received such process. The record evidence indicates that Ms. Lang received multiple warnings related to her performance at work throughout 2015 and 2016 (Dkt. Nos. 40-10, at 4-5; 40-16, at 1-3). At the November 21, 2016, meeting of the Nursing Home Commission where her employment was terminated, Ms. Lang told the commissioners "ya'll discussion [sic] what I did and didn't do right in executive session." (Dkt. No. 40-9, at 3). Ms. Lang even sought an appeal before the City Council's December 2016 meeting (Dkt. No. 40-20, at 1). The minutes of the Dermott City Council's December 12, 2016, meeting indicate that the City Council considered the matter and unanimously voted to terminate Ms. Lang (Dkt. No. 40-11, at 1). There is no record evidence that Ms. Lang spoke or otherwise appeared at the December 12, 2016, City Council meeting. Accordingly, on this undisputed record evidence, this Court concludes that any reasonable juror would conclude that Ms. Lang was given all the process she was due under a "graduated disciplinary appeal process."

For these reasons, the Court grants defendants summary judgment on Ms. Lang's § 1983 claim for alleged violations of her constitutional rights.

### B. Civil Conspiracy Claim

Ms. Lang also alleges that defendants conspired "to terminate [her] on specious grounds" in violation of 42 U.S.C. § 1985 (Dkt. No. 8, ¶¶ 18-12). The Court construes this claim as a claim under § 1985(3) as neither §§ 1983(1) nor 1983(2) are applicable to the facts in this case.

"[T]o prove a private conspiracy in violation of . . . § 1985(3), a plaintiff must show, *inter alia,* (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68 (1993) (internal citations, marks, and footnotes omitted). "When 'women' is the class sought to be protected in a § 1985(3) claim, the Supreme Court has stated that invidious discrimination 'demand[s] . . . at least a purpose that focuses upon women *by reason of their sex*' giving as an example 'the purpose of 'saving' women *because they are women* from a combative, aggressive profession such as the practice of law.'" *Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005) (citing *Bray*, 506 U.S. at 270) (emphasis in original). There is no evidence in the record to indicate that Ms. Lang's termination was motivated by any discriminatory animus on the part of defendants. Specifically, there is no evidence in the record that her employment was terminated on the basis of her gender or race.

Furthermore, the Eighth Circuit has held that "status as a whistleblower does not entitle one to protection under § 1985." *McDonald v. City of Saint Paul*, 679 F.3d 698, 706-07 (8th Cir. 2012) (citations omitted). Accordingly, even if the Court were to credit Ms. Lang's assertions that

she was fired as a result of notifying the City Council about the transfer of funds by Mr. Hampton, her status as whistleblower does not entitle her to protection under § 1985.

Accordingly, the Court finds that no reasonable juror could conclude that Ms. Lang's termination was motivated by any discriminatory animus, and therefore the Court grants defendants summary judgment on Ms. Lang's § 1985 civil conspiracy claim.

### C. RICO Claim

Ms. Lang's final claim against defendants sounds under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Specifically, Ms. Lang alleges that defendants "caused plaintiff injury to her property" as a result "of their RICO pattern of racketeering activities . . . ." (Dkt. No. 8, ¶ 22). Defendants argue that they are entitled to summary judgment on this claim because Ms. Lang does not have standing to assert a claim under 18 U.S.C. § 1961 (Dkt. Nos. 39, at 6-7; 42, at 6-7). They also argue that Ms. Lang's civil RICO claim must fail because she cannot demonstrate a "pattern of racketeering activity" required to support her claim (Dkt. Nos. 39, at 7-8; 42, at 6).

Assuming without deciding that Ms. Lang has standing to bring her civil RICO claim, the Court concludes that no reasonable juror could conclude, based upon the undisputed record evidence and drawing all reasonable inferences in favor of Ms. Lang, that defendants engaged in a "pattern of racketeering activity." To succeed on her civil RICO claim, Ms. Lang must demonstrate that defendants "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 752 (8th Cir. 2003) (quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997)). "Racketeering activity is defined in § 1961(1) as any act or threat involving murder, kidnaping [sic], gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance

or listed chemical, acts indictable under certain federal laws, and numerous other offenses." *Smith v. Wampler*, 95 Fed. App'x 194, 195 (8th Cir. 2004) (citations omitted).

While Ms. Lang has alleged that Mr. Hampton engaged in multiple criminal acts—including: (1) removing money from the Nursing Home's capital improvement fund, (2) use of public employees for personal benefit, and (3) impersonating a law enforcement officer—the undisputed record evidence provides little support for any of these allegations or any other allegations that would constitute actionable conduct under RICO. Even if this Court assumes for purposes of resolving this motion that the acts alleged by Ms. Lang are "racketeering activities," the Court grants summary judgment to defendants on this claim.

In support of her allegations, Ms. Lang cites to the minutes of the January 28, 2016, meeting of the Nursing Home Commission, but she fails to point to any portion of those minutes that supports her allegations that defendants engaged in racketeering activities (*See* Dkt. No. 55-4). Furthermore, Ms. Lang provides excerpts of Mr. Hampton's deposition, but she fails to identify which portions of that deposition tend to show that Mr. Hampton engaged in racketeering activities (*See* Dkt. No. 55-6). After examining those excerpts, the Court concludes that no reasonable juror could conclude that Mr. Hampton engaged in the alleged activities Ms. Lang contends are racketeering activities.

Finally, Ms. Lang attached Resolution No. 2016-10 to her response to defendants' motions for summary judgment (Dkt. No. 55-10). While the undisputed record evidence tends to show that the Dermott City Council did pass this resolution with the intent to provide the Nursing Home Commissioners with $600.00 each, the undisputed record evidence also indicates that the Commissioners never received any such payment (Dkt. No. 40-10, at 2). Furthermore, there is no evidence in the record that Resolution No. 2016-10 was passed in exchange for Ms. Lang's

13

termination from her position, even construing all reasonable inferences from the record evidence in favor of Ms. Lang (Dkt. No. 40-26, at 3).

The Court grants defendants summary judgment because, even if Ms. Lang has standing to bring a RICO claim, no reasonable juror could conclude on the record evidence that defendants engaged in the alleged conduct Ms. Lang claims constitutes "racketeering activity."

## IV. Conclusion

The Court grants separate defendants' Mr. Hampton and Mr. Hargraves' motion for summary judgment (Dkt. No. 38). The Court also grants separate defendant Ms. Copico's motion for summary judgment (Dkt. No. 41). The requested relief is denied.

It is so ordered, this the 5th day of June, 2018.

*/s/ Kristine G. Baker*
KRISTINE G. BAKER
UNITED STATES DISTRICT COURT